IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00463-STV

COLORADO RANCHERS, INC., a Colorado corporation,

    Plaintiff,

v.

JANA FOOD SERVICE, INC., a Texas corporation,
EL CAMPESINO FOOD, LLC, a Texas limited liability company, and
NADER AHMAD, an individual,

    Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Proceeding to the Northern District of Texas (the "Motion"), filed February 28, 2017. [#8] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion. For the following reasons, the Motion is **GRANTED** to the extent it seeks transfer to the Northern District of Texas.[1]

**I.    Background**

    As alleged in the Complaint, Plaintiff is a Colorado corporation specializing in the production and wholesale distribution of specialty cheeses and preserved meats. [#4, ¶ 1] Defendant Jana Food Services, Inc. ("Jana") is a Texas corporation with its principal

---

[1] The Parties have consented to have a United States Magistrate Judge conduct all proceedings in this action, including the entry of a final judgment. [#11, 12]

place of business in Texas, El Campesino Food, LLC ("ECF") is a Texas limited liability company, and Nader Ahmad is a Texas resident. [*Id.* at ¶¶ 2-4] Defendant Ahmed is the owner and principal officer/manager of both JANA and ECF.[2] [*Id.* at ¶ 4] Jana and ECF are distributors of food products to retail outlets. [*Id.* at ¶¶ 2-4]

The instant dispute arises out of a Distributor Agreement (the "Agreement") originally entered into by Plaintiff and Jana. [*Id.* at ¶ 9] Pursuant to the Agreement, Jana was granted the "exclusive and non-assignable right" to sell Plaintiff's products "in the Dallas-Fort Worth metroplex" for a term of two years. [*Id.* at ¶ 10] Mr. Ahmad signed a Personal Guarantee ("Personal Guarantee One") whereby he guaranteed payment of any sums Jana owed Plaintiff. [*Id.* at ¶ 16]

Within a few weeks of signing the Agreement, Mr. Ahmad approached Plaintiff with a request that he be allowed to operate as a distributor through a different company that he had recently established, ECF, without having to sign a new Agreement. [*Id.* at ¶ 19] Plaintiff agreed, but required Mr. Ahmad to sign a second Personal Guarantee for the debts of ECF. [*Id.* at ¶ 21(b)] Mr. Ahmad agreed and signed a Personal Guarantee of any sums ECF owed Plaintiff ("Personal Guarantee Two"). [*Id.* at ¶ 22]

On January 10, 2017, Plaintiff filed its Complaint in Denver District Court, alleging that Jana and ECF currently owe Plaintiff $125,202.96 pursuant to the Agreement. [*Id.* at ¶ 35] The Complaint brings actions for breach of the Agreement, breach of the Personal Guarantees, breach of implied obligations and covenants of good faith and fair

---

[2] In response to the Court's Order to Show Cause [#22], Defendants clarified that Mr. Ahmad is the sole member, manager, owner and officer of ECF, and that Mr. Ahmad not only resides but also is domiciled in Texas. [#23, ¶¶ 7-10] Jana, ECF and Mr. Ahmad thus are all citizens of Texas for jurisdictional purposes and the Court is satisfied that diversity jurisdiction exists. Accordingly, the Court DISCHARGES the Order to Show Cause.

dealing, alter ego, fraud and unjust enrichment. [#4] On February 21, 2017, Defendants removed the action to this Court. [#1] One week later, Defendants filed the instant Motion seeking dismissal for lack of personal jurisdiction or, in the alternative, transfer of the proceedings to the Northern District of Texas. [#8]

In support of the Motion, Defendants submitted a Declaration of Nader Ahmad. [#8-1] In it, Mr. Ahmad explains that Jana and ECF operate exclusively in Texas and have never sold any products to any customers in Colorado. [*Id.* at ¶¶ 2-3] Mr. Ahmad further declares that neither Jana nor ECF has any employees or offices in Colorado, and that none of Defendants owns any property in Colorado. [*Id.* at ¶¶ 4-5] Aside from distributing products for Plaintiff, all of which is distributed in Texas, neither Jana nor ECF have ever conducted business in Colorado. [*Id.* at ¶¶ 6, 8] As part of Defendants' dealings with Plaintiff, Mr. Ahmad traveled to Colorado on one occasion, to sign the Agreement. [*Id.* at ¶ 9]

In contrast to Defendants' limited contacts with Colorado, Mr. Ahmad declares that Plaintiff employs personnel in Texas to conduct demonstrations of Plaintiff's products at retail outlets. [*Id.* at ¶ 12] Jana and ECF "routinely coordinated their marketing efforts in Texas outlets with these Texas-based representatives." [*Id.* at ¶¶ 12-13] Mr. Ahmad also has often met with Plaintiff's representatives in Texas. [*Id.* at ¶ 11] Mr. Ahmad asserts that one of the areas of dispute between Plaintiff and Defendants involves Plaintiff's alleged attempts to sell directly to retailers in the Dallas-Fort Worth area, contrary to the exclusive distribution rights set forth in the Agreement. [*Id.* at ¶¶ 16-17] According to Mr. Ahmad, these exclusive distribution disputes are the reason why Defendants have not paid Plaintiff the amounts allegedly due. [*Id.* at ¶ 19]

3

On March 28, 2017, Plaintiff filed its Opposition to the Motion. [#17] In support of its Opposition, Plaintiff submitted an Affidavit of Gabriel Robles, Plaintiff's President and majority owner. [#17-1] Mr. Robles explains that in September 2014, he was contacted by a Jana representative about Jana becoming a distributor for Plaintiff.[3] [#17-1 at ¶ 7] From September 2014 through December 2014, Jana representatives made numerous calls to Plaintiff and "mounted a campaign" to convince Plaintiff to work through Jana in the Dallas-Fort Worth market. [*Id.* at ¶ 9] Mr. Robles traveled to Texas to meet with Mr. Ahmad. [*Id.* at ¶ 11] During the week of February 22, 2015, Mr. Ahmad came to Denver, received training and ultimately signed the Agreement.[4] [*Id.* at 14] According to Mr. Robles, "[h]ad Mr. Ahmad not made the repeated attempts to convince [Plaintiff] to allow it to be a distributor, with what we now know to be false representations and promises, [Plaintiff] would never have entered into any business relationship with Mr. Ahmad or his companies." [*Id.* at ¶ 22]

Defendants filed their Reply in Support of Defendants' Motion on April 21, 2017. [#20] This Court had previously entered a Scheduling Order on March 28, 2017. [#16] Pursuant to that Scheduling Order, the discovery cut-off is November 13, 2017, and the dispositive motions deadline is November 20, 2017. [*Id.* at 10] Trial has not yet been set.

---

[3] The Affidavit states that this contact occurred in September 2015, but the emails make clear that the contact occurred in September 2014. [17-3]

[4] In his Affidavit, Mr. Robles indicates that Personal Guarantee One also was signed by Mr. Ahmad while he was in Denver. [*Id.* at ¶ 14] Personal Guarantee One, however, is dated March 3, 2015 [#4 at 22], whereas Mr. Robles indicates in his affidavit that Mr. Ahmad was only in Denver until February 26, 2015 [#17-1, at ¶ 14].

## II. Analysis

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) gives "discretion [to] the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citations omitted). The statute was intended to revise the *forum non conveniens* doctrine and "[c]ourts therefore enjoy greater discretion to transfer a cause pursuant to § 1404(a) than to dismiss the action based upon *forum non conveniens.*" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Nonetheless, Section 1404 "does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there." *Id.* The party moving to transfer a case pursuant to Section 1404 bears the burden of establishing that the existing forum is inconvenient. *Id.*

Here, there is no dispute that the case could have been brought in the Northern District of Texas as that district has personal jurisdiction over all Defendants. As a result, the only issue is whether Defendants have met their burden of showing that the existing forum is inconvenient such that the interests of justice support transferring the case to the Northern District of Texas. In evaluating that issue, the Court is to consider the following factors:

> The plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative

5

> advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

Here, Plaintiff has chosen Colorado as the forum, and that factor weighs against transfer. Other factors, however, support transfer. First, the accessibility of witnesses, including the availability of compulsory process, supports transfer to Texas. Defendants have indicated that they intend to bring counterclaims concerning Plaintiff's alleged breach of the exclusive distribution rights set forth in the Agreement. [#8 at 15] Virtually all of those witnesses, including all of the retailers, are located in Texas. [*Id.*; #4, ¶ 10 (explaining that the exclusive dealership area was limited to the Dallas-Fort Worth metroplex)] These Texas retailers would not be subject to compulsory process in Colorado. *See* Fed. R. Civ. P. 45(c)(1).

Second, the cost of making the necessary proof supports a transfer. Besides the retailers, Defendants have identified their personnel and Plaintiff's Texas representatives as potential witnesses. [#8 at 15] All of those individuals reside in Texas. In contrast, Plaintiff has identified a single Colorado witness, Mr. Robles, who would be needed for trial. [#17 at 9-10] Given that the majority of witnesses reside in Texas, it would be more cost efficient to litigate this matter there.

Third, consideration of the relevant advantages and obstacles to a fair trial supports transfer. Again, the Texas retailers are not subject to compulsory process in Colorado. Without the retailers, Defendants could be prejudiced in their ability to pursue

6

their intended counterclaim. Fairness supports transferring this case to a district where all necessary witnesses can be subpoenaed. *See Logsdon v. BNSF Railway Co.*, No. 15-cv-00396-CMA-MJW, 2015 WL 3903512, at *4 (D. Colo. June 24, 2015).

Weighing the *Chrysler Credit Corp.* factors,[5] the Court finds that the existing forum is inconvenient and the interests of justice support transferring the case to the Northern District of Texas. Nearly all of the witnesses reside in Texas, and the lawsuit entails a dispute over an exclusive distribution agreement for territory in Texas. Jana and ECF operate exclusively in Texas and do not have any employees or offices in Colorado. In contrast Plaintiff employs personnel in Texas and distributes its products in Texas. Considering these factors, the Court finds that the case should be transferred to the Northern District of Texas.

Accordingly, for the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Proceeding to the Northern District of Texas [#8] to the extent it seeks transfer to the Northern District of Texas.

Further, it is **ORDERED** that this action be transferred to the Northern District of Texas for further prosecution and adjudication.

DATED: June 5, 2017  BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[5] The remaining *Chrysler Credit Corp.* factors neither support nor undermine transfer.